# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MATTHEW HUDSON**, | Case No. 3:17-cv-29-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **NANCY A. BERRYHILL**, Commissioner of Social Security, | |
| Defendant. | |

Evan D. Marken, MARKEN LAW GROUP, PS, 1312 N. Monroe, Spokane, WA 99201; Nancy Meserow, LAW OFFICES OF NANCY J. MESEROW, 7540 SW 51st Avenue, Portland, OR 97219. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Kathryn A. Miller, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Matthew Dean Hudson seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act. For the following reasons, the Commissioner's decision is affirmed.

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

**BACKGROUND**

**A.  Plaintiff's Application**

Plaintiff was born on March 20, 1986, and was twenty-eight years old as of his alleged disability onset date. Administrative Record ("AR") 144. Plaintiff is a veteran of the United States Army. Plaintiff's service began in January 2012, and he served as a combat medic.

Plaintiff was honorably discharged in May 2014. AR 60. Plaintiff graduated with a Bachelor's degree from Eastern Oregon University in 2008, and before his service in the Army, Plaintiff worked as a waiter at Denny's and in the apparel department at Fred Meyer. AR 60. Plaintiff filed an application for DIB on November 18, 2014. AR 144-46. Plaintiff alleges that his disability began on May 28, 2014, due to bilateral patellofemoral syndrome, bilateral medial collateral ligament sprains, bilateral chondromalacia patella, lumbar strain, left elbow medial epicondylitis, bilateral tendonitis in the hands, bilateral Achilles tendonitis, depression, and anxiety. AR 146.

The Commissioner denied Plaintiff's application initially on March 2, 2015, and again on reconsideration on June 23, 2015. AR 99, 143. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). AR 161-62. An initial hearing was scheduled for November 2, 2015, but that hearing was postponed because the medical expert had not received the full record and was not prepared to testify. AR 83-87. The hearing was rescheduled for February 29, 2016. At that hearing, the ALJ heard testimony from medical expert Dr. Robert John McDevitt and briefly from Plaintiff, but the hearing ended abruptly after the ALJ learned that Plaintiff was under the influence of marijuana.[1] AR 53-54. The hearing was reset for July 11, 2016. On that date, the ALJ heard testimony from Plaintiff and vocational expert ("VE") Richard Hengst. AR 57-80. After considering the testimony and the evidence in the record, the ALJ determined that Plaintiff is not disabled. *See generally* AR 15-32.

Plaintiff petitioned the Appeals Council for review of the ALJ's decision. AR 14. The Appeals Council denied Plaintiff's request on November 15, 2016 (AR 1-3), rendering the ALJ's decision the final decision of the Commissioner. Plaintiff seeks review of the ALJ's decision.

---

[1] After the February hearing, in April 2016 Plaintiff applied for and received a medical marijuana card issued by the State of Oregon. AR 1660-64.

**B. The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the

claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.   Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.   Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 28, 2014, the alleged onset date. AR 20. At step two, the ALJ found that Plaintiff has the following severe impairments: "low back strain, bilateral knee medial collateral ligament strains, right knee chondromalacia of the patella, depressive/affective disorder and anxiety/panic disorder." *Id.* The ALJ also found that Plaintiff suffers from marijuana abuse and chest pain, but that these two impairments do not rise to the level of being severe impairments. Regarding the marijuana abuse, the ALJ found that Plaintiff acknowledged near-daily use since his alleged onset date, and that Plaintiff now has a state-issued medical marijuana card. *See* AR 1660-63. Regarding Plaintiff's chest pain, the ALJ noted Plaintiff's history of Wolff-Parkinsons-White ("WPW") Syndrome[2] but pointed out that Plaintiff underwent an electrocardiogram ("ECG"), a cardiac consultation, a holter monitor, and an echocardiogram (*see* AR 1975-80), and that this testing revealed that Plaintiff's chest pain was not related to an arrhythmia or other cardiac cause. AR 21. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the listed impairments in the regulations.

The ALJ next assessed Plaintiff's RFC. The ALJ determined that Plaintiff has the capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), but with certain limitations. Specifically, the ALJ found that Plaintiff was limited in the following ways:

> He can lift and carry up to 20 pounds occasionally and ten pounds
> frequently. He can stand and walk two out of eight hours and sit

---

[2] The parties refer the Court to the Mayo Clinic's website, which describes WPW as a condition wherein "an extra electrical pathway between [the] heart's upper and lower chambers causes a rapid heartbeat . . . ." *Wolff-Parkinson-White (WPW) syndrome*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/wolff-parkinson-white-syndrome/symptoms-causes/syc-20354626 (last visited February 26, 2018). Symptoms result from a faster heart rate, and commonly include heart palpitations, dizziness, shortness of breath, fainting, fatigue, and anxiety. *Id.*

> for six out of eight hours. He can never climb ladders, ropes or scaffolds. He can occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl. He should avoid heights, hazards and heavy equipment. He needs a cane to ambulate over uneven or rough surfaces. He can perform jobs consistent with specific vocational preparation ratings of 1 or 2. He can also have no public contact.

AR 23. In formulating the RFC, the ALJ considered Plaintiff's testimony and the medical opinions of treating physicians Drs. Michael Yao and David Dodge, examining physician Dr. March Dillon, State agency medical consultants Drs. Richard Alley and Thomas Davenport, and medical expert Dr. Robert John McDevitt. AR 28-30.

Regarding Plaintiff's testimony, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 24. The ALJ gave Dr. Yao's opinion "partial weight" because the ALJ believed that Dr. Yao's report of the severity of Plaintiff's symptoms was not supported by the medical record. The ALJ gave Dr. Dillon's opinion "some weight" because the ALJ did not find any corroboration for Dr. Dillon's assertion that Plaintiff required a heightened level of supervision in a workplace setting. AR 28. The ALJ gave Dr. Dodge's opinion "little weight" because Plaintiff stated he had only seen Dr. Dodge once to acquire a medical marijuana card, and Plaintiff's marijuana use was against the advice of Plaintiff's other treating doctors. As for the opinions of the State agency consultants, the ALJ generally gave Dr. Alley and Dr. Davenport's opinions "significant to great weight," however, the ALJ gave limited weight to the portion of their opinions concerning Plaintiff's mental impairments because evidence submitted after their opinions were issued contradicted their assessments that Plaintiff's mental impairments were nonsevere. AR 28-30. The ALJ gave Dr. McDevitt's opinion "significant weight," noting that Dr. McDevitt "is the only medical professional who appears to have reviewed the entire record." AR 30.

At step four, the ALJ determined that Plaintiff had previously worked as a waiter and in retail sales, and that Plaintiff was unable to perform any past relevant work. AR 30. At step five, the ALJ considered the testimony of the VE and found that Plaintiff could perform jobs that exist in significant numbers in the national economy. AR 31. Those jobs included electronics worker, hand packager and inspector, and production assembler. *Id.* Thus, the ALJ found that Plaintiff is not disabled. *Id.*

## DISCUSSION

Plaintiff alleges that the ALJ erred by: (A) failing to consider Plaintiff's WPW syndrome severe at step two; (B) providing insufficient reasons for discrediting Plaintiff's symptom testimony; (C) providing insufficient reasons for rejecting the medical opinions of Drs. Yao and Dillon; (D) failing to include limitations in the RFC that accurately reflect Plaintiff's exertional difficulties due to chest pains and his need for a companion animal; and (E) providing insufficient reasons for rejecting the Veteran's Administration's ("VA") 70 percent disability rating. The Court addresses each assignment of error in turn.

### A. Plaintiff's Wolff-Parkinson-White Syndrome at Step Two

Plaintiff argues that the ALJ erred at step two in failing to find Plaintiff's diagnosis of WPW syndrome to be a severe impairment. Plaintiff cites numerous instances in the record where he has complained of chest pain over the years, and Plaintiff attributes this chest pain to WPW syndrome. Plaintiff asserts that the ALJ "confuses WPW as a symptom[ ] explained by absence of arrhythmia, instead of a severe impairment of the heart." The Commissioner responds that substantial evidence in the record supports the ALJ's conclusion that Plaintiff's chest pain did not have a cardiac cause, and that Plaintiff's WPW was nonsevere.

An impairment is considered "severe" at step two when it "significantly limits" a claimant's ability to perform basic work tasks. 20 C.F.R. § 404.1520(c). An impairment or

combination of impairments is "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis in original). The claimant bears the burden at step two to show the existence of a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii); *see also Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007) (explaining that the claimant bears the burden at steps one through four of the sequential analysis). Because a finding of a severe impairment at step two "requires a careful evaluation of the medical findings . . . and an informed judgment about [their] limiting effects[,] . . . medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities." Social Security Ruling ("SSR") 85-28, *available at* 1985 WL 56856, at *4 (1985).

There is medical evidence in the record establishing that Plaintiff has been diagnosed with WPW syndrome. *See, e.g.*, AR 44 ("he has . . . Wolff-Parkinson-White Syndrome"); AR 1727 ("recently diagnosed WPW pattern on ECG"); AR 1975 ("noted WPW pattern on ECG"). The medical evidence in the record is also replete with instances when Plaintiff has complained of chest-pains to his medical providers. *E.g.*, AR 1595 ("does have daily mostly constant chest pain. L chest worse with exercise or motion or deep breath seems to improve at night"); AR 1598 ("near continuous chest pain, with varying intensity, worse with activity, which worries him"); AR 1636 ("still with episodes of rapid heart rate, associated with nausea, vomiting and chest discomfort"); AR 1652 ("Patient reported episodes of constant low level chest pressure intermittently. At times these episodes last all day, every day."). Missing from the record, however, is any indication from a medical professional that Plaintiff's WPW syndrome *caused* Plaintiff's chest pain. Indeed, the medical providers believed it was not likely that Plaintiff's chest pains were caused by a cardiac problem.

Plaintiff underwent a holter monitor test during November through December 2015, an exercise tolerance test in December 2015, an echocardiogram on May 23, 2016, and an ECG on June 6, 2016. AR 1975. Those tests did not support a cardiac cause for Plaintiff's chest pain symptoms. *See* AR 1757 ("unclear if [chest pain is] associated with underlying conduction abnormality"); AR 1760 ("Do not have good explanation for intermittent chest pain, but aforementioned is reassuring for non cardiac causes."); AR 1975 ("His cardiac monitor was negative for arrhythmias and chest pains did not correlate with arrhythmia, therefore it was felt his chest pains were likely non-cardiac in nature."). Moreover, the record contains some evidence that Plaintiff's chest pains may be associated with anxiety, which the ALJ found to be severe at step two. *See* AR 1724 ("Reports that he has experienced chest pain for several years which is associated w. anxiety attacks that have been severe in the last year.").

Plaintiff argues that the diagnosis of WPW syndrome alone is sufficient to render it a severe impairment, but the evidence in the record does not demonstrate how that diagnosis limits Plaintiff's ability to perform basic work tasks, as required by 20 C.F.R. § 404.1520(c). WPW syndrome is a condition that causes a fast heartbeat. *See* Mayo Clinic, supra n.1. A myriad of tests have not determined that Plaintiff's chest pain is connected to an arrhythmia or other cardiac cause. Without a causal connection between WPW syndrome and Plaintiff's chest pain, there is no evidence in the record indicating that WPW syndrome causes any symptoms that limit Plaintiff's ability to work.

Additionally, where an ALJ errs by neglecting to list a severe impairment at step two, the error is harmless so long as the ALJ considers all of a claimant's functional limitations at steps four and five. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Such is the case here, because the ALJ found Plaintiff's anxiety to be severe at step two, which the ALJ concluded was the

cause of Plaintiff's chest pain and chest tightness. The symptoms Plaintiff argues would be

caused by WPW are anxiety, chest pain, and chest tightness. Thus, the symptoms alleged to be

caused by Plaintiff's WPW were considered by the ALJ in steps four and five. Therefore, even if

the ALJ erred by failing to consider WPW severe at step two, it would have been harmless error.

## B. Plaintiff's Symptom Evaluation

Plaintiff next assigns error to the ALJ's assessment of Plaintiff's symptom testimony.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be

expected to cause Plaintiff's symptoms, but that the intensity, persistence, and limiting effect of

those symptoms were not consistent with the medical evidence and other evidence in the record.

### 1. Standards for Evaluating a Claimant's Testimony

There is a two-step process for evaluating the credibility of a claimant's testimony about

the severity and limiting effect of the claimant's symptoms. *Vazquez v. Astrue*, 572 F.3d 586,

591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective

medical evidence of an underlying impairment 'which could reasonably be expected to produce

the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1029, 1036 (9th

Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When

doing so, the claimant "need not show that her impairment could reasonably be expected to cause

the severity of the symptom she has alleged; she need only show that it could reasonably have

caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the

ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 503 F.3d at 1036 (quoting

*Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must

state which pain testimony is not credible and what evidence suggests the complaints are not

credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing

*Bunnell*, 947 F.2d at 345-46).

Effective March 16, 2016, the Commissioner superseded SSR 96-7p, governing the

assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p,

*available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that

"subjective symptom evaluation is not an examination of an individual's character," and requires

the ALJ to consider all of the evidence in an individual's record when evaluating the intensity

and persistence of symptoms. *Id.* at *1-2; *see also Trevizo v. Berryhill*, 862 F.3d 987, 1000 n.5

(9th Cir. 2017). The Commissioner recommends that the ALJ examine "the entire case record,

including the objective medical evidence and individual's statements about the intensity,

persistence, and limiting effects of symptoms statements and other information provided by

medical sources and other persons; and any other relevant evidence in the individual's case

record." SSR 16-3p, 2016 WL 1119029, at *4. The Commissioner recommends assessing:

(1) the claimant's statements made to the Commissioner, medical providers, and others regarding

the claimant's location, frequency and duration of symptoms, the impact of the symptoms on

daily living activities, and other methods used to alleviate symptoms; (2) medical source

opinions, statements, and medical reports regarding the claimant's history, treatment, responses

to treatment, prior work record, efforts to work, daily activities, and other information

concerning the intensity, persistence, and limiting effects of an individual's symptoms; and

(3) non-medical source statements, considering how consistent those statements are with the

claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 2. The ALJ's Analysis

Plaintiff alleges a variety of mental and physical symptoms that limit his ability to work. These symptoms include difficulties with walking and standing, lifting heavy objects, sitting for prolonged periods of time, sleeping and waking up, and interacting with others, particularly in high-stress situations. Plaintiff also alleges that near-constant chest pain keeps him reclined on his couch, elevating his chest and legs. The ALJ provided five reasons for why Plaintiff's statements regarding the intensity, persistence, and limiting effect of his symptoms were not consistent with the medical evidence, each of which Plaintiff argues were in error.

First, the ALJ reasoned that the objective medical evidence does not support Plaintiff's alleged severity of his physical condition. Plaintiff argues that the ALJ's reliance on the objective medical evidence was in error because (1) some of the medical records that the ALJ relied were from *before* the alleged onset date of May 28, 2014, and (2) the ALJ failed to discuss Plaintiff's WPW syndrome, irritable bowel syndrome, and patellar chondromalacia. The Commissioner argues that the ALJ properly considered medical evidence from 2012 through 2015, and that this evidence was replete with mild, normal, or negative physical findings that support the ALJ's conclusion. The Court agrees with the Commissioner. The ALJ pointed to specific instances in the record after May 28, 2014, where Plaintiff was found to have objectively normal or mild physical findings, including records showing that Plaintiff: (1) showed no muscular atrophy, (2) had a normal gait, (3) reported walking one-to-two miles per day,

(4) declined medical treatment for pain, (5) had findings with normal strength, tone, and range of motion , (6) had normal neurological and musculoskeletal examinations, and (7) had full range of motion on all joints. *See* AR 24. The ALJ may not discredit Plaintiff's testimony regarding the severity of his symptoms "merely because they are unsupported by objective medical evidence," *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), but "medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)). In addition to the above physical findings, the ALJ noted that Plaintiff infrequently has been treated for his long history of pain complaints, or has declined treatment. *See* AR 24. Treatment is "an important indicator of the intensity and persistence" of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3).

Second, the ALJ reasoned that Plaintiff's activities of daily living ("ADL") were not physically limited to the extent that one would expect. AR 24-25. The ALJ pointed to various daily activities reported by Plaintiff. These include Plaintiff's dog walking,[3] lawn-mowing, shoe polishing and leather care hobby, ability to perform unspecified household chores, ability to drive, and ability to perform personal care. The ALJ also noted Plaintiff's statement that he *wanted* to get a gym membership for swimming and yoga (which he did not actually do). These activities do not contradict Plaintiff's claimed limitations. As the Ninth Circuit stated:

> We have repeatedly warned that ALJs must be especially cautious
> in concluding that daily activities are inconsistent with testimony
> about pain, because impairments that would unquestionably
> preclude work and all the pressures of a workplace environment
> will often be consistent with doing more than merely resting in bed
> all day.

---

[3] The ALJ noted that Plaintiff walks his dog one-to-four times a day, for ten-to-15 minutes at a time.

*Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). A claimant can still attempt to lead to a normal life in the face of limitations. *Id.*

Third, Plaintiff assigns error to the ALJ's use of evidence that Plaintiff's mental impairments have improved significantly since his hospitalization. Plaintiff argues that, in fact, the evidence shows that his anxiety symptoms *increased* since his 2015 hospitalization. The Court does not find evidence to support Plaintiff's argument that his symptoms increased since the period in 2015 when he was regularly hospitalized. The Court is not, however, persuaded that Plaintiff's mental health improvement is a legally sufficient reason to discredit his testimony of the severity of his symptoms. The ALJ pointed to several instances in the record after Plaintiff's September 2015 hospitalizations wherein Plaintiff reported to medical providers that his anxiety and chest pain were improved. The mere fact that Plaintiff's anxiety no longer requires him frequently to be hospitalized, however, does not mean that Plaintiff's anxiety is not severe.

Dr. McDevitt, whose opinion the ALJ gave significant weight, opined in early 2016 that Plaintiff's anxiety diminished his ability to function outside of his home. AR 44-45. "Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms . . . [and] with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in the workplace." *Garrison*, 759 F.3d at 1017. Although the record does support the ALJ's finding that Plaintiff's anxiety symptoms improved since the fall of 2015, the mere fact that Plaintiff's symptoms improved from a time when he regularly was hospitalized was not a clear and convincing reason to discredit his testimony.

Fourth, Plaintiff assigns error to the ALJ's reliance on Plaintiff's daily marijuana use to discredit his testimony. Plaintiff argues that the ALJ provided no reason that marijuana use is discrediting, in and of itself. The ALJ, however, very clearly stated that Plaintiff's doctors advised him numerous times that marijuana was contraindicated for his anxiety (AR 26), and this is supported by substantial evidence in the record. *E.g.*, AR 1238 ("It is possible his symptoms could be related to his daily marijuana use and subsequent cyclic vomiting syndrome. I see that this has been discussed with him previously and I also encouraged him to cut back on his daily use of marijuana."); AR 1832 ("He smokes about 2-3 grams of cannabis daily and thinks it helps him manage anxiety and dismisses warnings to the contrary about worsening anxiety."); AR 1766-67 ("Smokes approx. 1-1.5 grams of cannabis a day . . . no insight into negative effects of cannabis on anxiety."); AR 1179 ("Uses -2grams of [marijuana] a day. Cautioned about potential impact on anxiety and depression. States no such issues."); AR 1097 ("Encouraged him to minimize cannabis use given paradoxical reaction, possibly inducing nausea."). An ALJ may "properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina*, 674 F.3d at 1113 (quoting *Tomasetti*, 533 F.3d at 1039) (quotation marks omitted). Plaintiff's continued marijuana use against his doctors' repeated advice was a valid, clear, and convincing reason for the ALJ to reject Plaintiff's symptom testimony.

Finally, the ALJ relied on Plaintiff's reported social activities to discredit Plaintiff's testimony regarding his alleged social limitations. The ALJ looked to several instances where Plaintiff engaged in social activities, including (1) Plaintiff's use of social media; (2) a June 2015 visit with a friend in Seattle; (3) his work at a local nonprofit in September 2015; (4) a statement that Plaintiff was interested in getting out and socializing more; (5) reported socializing with one

or two friends at home in October 2015; (6) Plaintiff's ability to retain a roommate through Craigslist; (7) his reports of multiple sexual partners; (8) his ability to access social services; (9) a statement in June 2016 that Plaintiff wanted to travel; (10) his ability to shop independently; and (11) Plaintiff's use of public transportation.

Plaintiff challenges the ALJ's reliance on his social media and public transportation usage, his statement that he wanted to travel, and his September 2015 trip to Seattle, but does not raise issues regarding the remaining evidence of social activities. Plaintiff argues that the ALJ overstated Plaintiff's social media usage, that he no longer uses public transportation because it triggers panic attacks, that the single trip to Seattle resulted in a hospitalization, and that his desire to travel was not actually realized and thus cannot properly be used to discredit his testimony. The evidence in the record, however, supports the ALJ's observation that Plaintiff still uses public transportation, despite difficulties. *See* AR 1766 (March 11, 2016, note stating that "[Plaintiff] reports having had a mild panic attack . . . on the train going to see a friend."). Plaintiff's own testimony undermines his minimization of his social media usage—Plaintiff testified that he interacts socially online every day, multiple times per day. AR 64. Thus, the ALJ's fifth and final reason for discrediting Plaintiff's testimony was clear, convincing, and supported by substantial evidence.

Although some of the above reasons that the ALJ cited were legally insufficient, the ALJ cited other clear and convincing reasons for discrediting Plaintiff's symptom testimony, and these reasons were supported by substantial evidence. "So long as there remains 'substantial evidence supporting the ALJ's conclusions on [the credibility of plaintiff's symptom testimony]' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 553

F.3d 1155, 1162 (9th Cir. 2008) (quoting *Batson*, 359 F.3d at 1197) (first alteration added, second alteration in original). The ALJ therefore did not err in evaluating Plaintiff's subjective symptom testimony.

## C. Medical Evidence

Plaintiff argues that the ALJ erred in rejecting the opinions of Drs. Yao and Dillon. The Commissioner initially argues that these two opinions were not rejected but were given partial weight by the ALJ. But even if these opinions were rejected, argues the Commissioner, the ALJ did not err because the ALJ gave legally sufficient reasons for rejecting them.

The Ninth Circuit distinguishes between three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, greater weight is given to the opinions of treating physicians because they provide a "longitudinal perspective" and "bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). While a treating physician's opinion is entitled to the greatest weight, an examining physician's opinion is "entitled to greater weight than that of a non-examining physician." *Garrison*, 759 F.3d at 1012. The amount of weight given to an examining physician depends upon "the degree to which he provides supporting explanations for his opinions." *Id.* (quoting 20 C.F.R. § 404.1527(d)(3) (corrections omitted)). When either a treating or examining physician's opinion is not contradicted by another doctor's opinion, the opinion may be rejected only for clear and convincing reasons. *Lester*, 81 F.3d at 830.

### 1. Dr. Yao

Dr. Yao was a staff psychiatrist at the VA who treated Plaintiff primarily for mental health medication management from October 2015 through February 2016. *See* AR 1585-86; 1598-99; 1610-13; 1616-18; 1630-33; 1644-48. Dr. Yao completed a Mental Disorders and Disability Benefits Questionnaire for Plaintiff on January 26, 2016. *See* AR 1406-10. In completing the questionnaire, Dr. Yao reviewed Plaintiff's treatment records from August 2015 through January 2016. Dr. Yao stated that Plaintiff suffers from a variety of symptoms, including memory loss, panic attacks more than once a week, and near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively. AR 1409. Dr. Yao believed that Plaintiff's panic disorder limited his ability to function in a work-place setting. Specifically, Dr. Yao believed that the "anticipatory anxiety of having another panic attack limits [Plaintiff's] ability to leave home, sustain effort in work or social situations." AR 1407. Dr. Yao gave Plaintiff a Global Assessment Functioning ("GAF") score of 40 and commented that Plaintiff had "significant functional limitation due to panic; [history] of freq[uent] ER and hosp[ital] visits." AR 1406.

At the hearing, the ALJ asked Dr. McDevitt whether he agreed with "14F" (*i.e.* Exhibit 14F, Dr. Yao's questionnaire). Dr. McDevitt stated unequivocally that he agreed with Dr. Yao. AR 47 ("I agree with 14F, but I feel very strongly that this man needs both medical and psychiatric treatment"). Dr. Yao's opinion, however, is contradicted by the State agency consultants, although the ALJ gave those consultants' opinions little weight. Thus, the ALJ needed to provide specific and legitimate reasons to contradict Dr. Yao's opinion.

The ALJ gave "partial weight" to Dr. Yao's opinion. The ALJ acknowledged that Dr. Yao's opinions were "consistent with a finding [that Plaintiff] has severe mental impairments" but that Dr. Yao's opinion regarding "the severity of [Plaintiff's] limitations is not

reflected in the medical record" because Plaintiff's anxiety had improved since "the short period in 2015 when his symptoms were heightened," and "there is no longer any evidence of frequent emergency room or hospital visits due to his anxiety symptoms." AR 29. The ALJ further gave "little weight" to the GAF score and explained that it "shed some doubt on the doctors [*sic*] understanding of his profession, which eliminated GAF scores in DSM V some years ago. GAF scores are affected by many factors not directly related to a person's mental health, for example unemployment and homelessness." AR 29.

Plaintiff argues that the ALJ's rejection of the GAF score was improper because the VA's questionnaire form specifically asked for a GAF score. Although the ALJ's dismissal of Dr. Yao's GAF assessment was probably more harsh than necessary given that the VA's form did request a GAF score, the ALJ provided a clear and convincing reason for rejecting the GAF score, namely that the *Diagnostic & Statistical Manual of Mental Disorders* ("DSM-V") has stopped using GAF scores. *See Olsen v. Comm'r Soc. Sec. Admin*, 2016 WL 4770038, at *4 (D. Or. Sept. 12, 2016) ("The DSM-V no longer recommends using GAF scores to measure mental health disorders because of their 'conceptual lack of clarity . . . and questionable psychometrics in routine practice.'" (quoting *DSM-V*, 16 (5th ed. 2013))).

The ALJ's remaining reason for partially crediting Dr. Yao's opinion is also clear and convincing. Dr. Yao filled out a check-box form indicating that Plaintiff suffered from near-continuous anxiety or depression and that he had panic attacks more than once a week. That frequency of panic attacks is not supported by the record, however, except during the brief period during 2015 when Plaintiff regularly was hospitalized. For instance, on December 22, 2015, Plaintiff reported to Dr. Mallon that he did not have a panic attack in the two weeks between his therapy appointments. AR 1623. On February 18, 2016, Plaintiff reported "no

'severe' panics . . . in last 7 days" and that he "[t]hinks he is a bit better than when he first began [treatment]." AR 1598; *see also* AR 1599 ("In comparison to measures completed 11/26/15, veteran showing improvement on symptom measures he had filled out 2/1/16 and brought in today."). Dr. Yao's own notes indicate that the frequency and intensity of Plaintiff's panic attacks had improved. On January 28, 2016, Dr. Yao stated that Plaintiff had "no major panic attacks" but noted that Plaintiff reported "constant anxiety." AR 1611. On January 14, 2016, Dr. Yao noted that Plaintiff reported "gradual improvement in his anxiety," and that he has had "no major panic episodes rising to the level experienced in August/September." AR 1616.

Additionally, Dr. Yao opined that Plaintiff suffers from mild memory loss and impairment of short or long-term memory. AR 1409. This symptom endorsement is puzzling, however, because Plaintiff has never complained of memory loss to a treatment provider. As best the Court can discern from the record, evidence of Plaintiff's memory loss consists of a single treatment note from Dr. Yao on January 14, 2016, in which the doctor noted that Plaintiff was "forgetful of items he wanted to talk about." AR 1617.

The ALJ's reasons for partially crediting Dr. Yao's opinion were specific and legitimate (they were also clear and convincing, if the State agency contradicting opinions are not considered), and were supported by substantial evidence. Dr. Yao's assessment of the frequency of Plaintiff's panic attacks and the severity of his memory loss is not borne out in the medical record (including Dr. Yao's own treatment notes). The ALJ, therefore, did not err in giving Dr. Yao's opinion partial weight.

### 2. Dr. Dillon

Dr. March Dillon was a licensed psychologist at the VA who examined Plaintiff and completed a Disability Benefits Questionnaire. AR 1786-90. Dr. Dillon opined:

> Due to [Plaintiff's] panic (primarily) and depression (secondarily), it does not appear that [Plaintiff] can work in a loosely supervised situati[on] that required minimal interactions with the public. If his acute anxiety significantly decreases, it is likely that he would be able to work again in the future.

AR 1789. Dr. Dillon is an examining physician whose opinion, similar to Dr. Yao, was only contradicted by the State agency consultants whose mental health opinions were rejected by the ALJ.

The ALJ gave "some weight" to Dr. Dillon's opinions. The ALJ agreed that Plaintiff should have minimal public interaction and reiterated that Plaintiff's RFC limited him to no public contact. AR 29. The ALJ disagreed, however, with Dr. Dillon's opinion that the Plaintiff need a special level of supervision because elsewhere in the record, Plaintiff "is described as cooperative and pleasant and his cognition is intact" and his "anxiety symptoms do appear to have largely decreased." *Id.*

At the outset, it is less than clear whether Dr. Dillon actually believed that Plaintiff needed a heightened level of supervision, or whether his mention of a "loosely supervised" workplace was a generic description of a workplace.[4] Dr. Dillon appeared most concerned about Plaintiff's level of interaction with the public and discussed that limitation in other sections of the opinion, while level of supervision was only mentioned in the above-cited passage. Even assuming that Dr. Dillon believed Plaintiff required a heightened level of supervision, Dr. Dillon did not provide a reason for this opinion. The amount of weight that an examining physician's

---

[4] Plaintiff argues that Dr. Dillon's statement amounts to an opinion that Plaintiff could not be supervised *at all* and that Plaintiff could not work under *any* level of supervision. The Court disagrees with Plaintiff's characterization of Dr. Dillon's opinion. Dr. Dillon stated only that he believed Plaintiff could not work in a loosely supervised situation with minimal public contact. This opinion does not extend to a supervision level other than what was stated, it does not amount to an assessment that Plaintiff cannot be supervised at all, and the Court declines Plaintiff's invitation to interpret it as such.

opinion is entitled to depends upon "the degree to which he provides supporting explanations for his opinions." *Garrison*, 759 F.3d at 1012 (quoting 20 C.F.R. § 404.1527(d)(3) (alterations omitted)).

The ALJ's reason for rejecting this discrete supervision recommendation, if it is in fact a recommendation, is legally sufficient. The Court agrees with the Commissioner that the record is devoid of any other evidence supporting that Plaintiff needs additional supervision. No other treating, examining, or nonexamining physician has opined that Plaintiff requires heightened supervision. Evidence in the record *does* indicate that Plaintiff has difficulty initiating and maintaining social relationships (*see* AR 1409 (Dr. Yao's opinion that Plaintiff has difficulty "in establishing and maintaining effective work and social relationships"); AR 44-45 (Dr. McDevitt's opinion that Plaintiff's "socializing is somewhat limited")), but this evidence does not translate to a need for heightened level of supervision.

The ALJ provided a clear and convincing reason for rejecting Dr. Dillon's opinion that Plaintiff needs a heightened level of supervision. Accordingly, the ALJ did not err.

## D. Limitations Not Included in the RFC

Plaintiff argues that the RFC and, by extension, the dispositive hypothetical question posed to the VE, were in error because the ALJ failed to include (1) a limitation in the RFC that Plaintiff needs a companion animal and (2) more restrictive exertional limitations resulting from Plaintiff's chest pains, which Plaintiff again attributes to his WPW syndrome. The RFC represents the most a claimant can do, despite his limitations. 20 C.F.R. § 404.1545(a)(1). An ALJ must consider the "total limiting effect" of all of a claimant's severe and nonsevere impairments in determining the RFC, including the effect of pain. 20 C.F.R. § 404.1545(e); *see also Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). Only limitations that are supported by substantial evidence must be incorporated into the RFC and, by

extension, into the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

**1. Companion Dog**

Plaintiff relies on the testimony of Dr. McDevitt and a letter from Dr. James Bane to support Plaintiff's argument that he cannot work without a companion animal. The Commissioner argues that Plaintiff mischaracterizes Dr. McDevitt's testimony, and that this testimony is not probative of Plaintiff's current functioning.

At the hearing on February 29, 2016, the ALJ asked Dr. McDevitt whether Plaintiff had any additional limitations that should be incorporated into his RFC. Dr. McDevitt testified that, "He might, at this point, because he's got a transitional object, we call it, his dog, he might have to have the dog with him at the workplace . . . [and t]hat might pose an issue" for the VE. AR 47. Plaintiff argues that because Dr. McDevitt's statement regarding the dog was unprovoked, it should be interpreted as a recommendation or diagnosis that Plaintiff cannot function in a workplace setting without a companion animal. This argument is unavailing. Dr. McDevitt's statement that Plaintiff "might" need to have a companion animal in a workplace setting—provoked or not—was not a diagnosis but an observation that there was a possibility that Plaintiff may need a companion animal.

Dr. McDevitt did not examine Plaintiff, but rather based his medical opinions solely on a review of Plaintiff's medical records. AR 42. The only statement in Plaintiff's medical records regarding Plaintiff's need for a companion animal comes from Plaintiff's primary care physician, Dr. Bane. Dr. Bane drafted a letter on December 26, 2014, addressed to "whom it may concern," stating that he believed "many of [Plaintiff's] medical conditions as well as his overall health would improve with the presence of a companion animal." AR 428. In addition to the fact that this letter is addressed to a generic addressee and therefore its purpose and scope are unclear, the

letter is devoid of any mention that Plaintiff needs the animal in a workplace setting. One cannot reasonably infer from this letter that Plaintiff's symptoms would improve if he had the animal with him at work, as opposed to having the animal as a house pet, nor that Plaintiff even needs to be accompanied by the animal outside his home. Further, even if the Court construed Dr. Bane's letter as an opinion that Plaintiff's symptoms would improve if he had a companion animal at work, the letter is not an assessment that Plaintiff lacks the capacity to function without an animal. *See Valentine*, 574 F.3d at 691-92 (finding that a doctor's notation that the claimant would have "less difficulty" with certain tasks was not a statement that the claimant was "incapable of working *except* under the recommended conditions" (emphasis in original)).

Neither Dr. McDevitt's testimony nor Dr. Bane's letter, nor a combination of the two, amounts to a diagnosis or recommendation that Plaintiff is limited to having a companion animal in a workplace setting. Because the substantial evidence in the record does not support such a limitation, the ALJ did not err by excluding a companion animal limitation in Plaintiff's RFC.

### 2. WPW Limitations

Plaintiff next argues that the RFC is flawed because it does not fully account for the limitations caused by Plaintiff's WPW, which would have resulted in more exertional limitations in the RFC. As an initial matter, Plaintiff is incorrect about the effect of the ALJ's step-two finding of WPW syndrome as nonsevere. An ALJ must consider the limiting effects of both severe and nonsevere impairments, including the effect of pain, when formulating the RFC. 20 C.F.R. § 404.1545(e); *see also Valentine*, 574 F.3d at 690. Therefore, even though the ALJ properly considered Plaintiff's WPW syndrome nonsevere, the ALJ was required to consider its limiting effects because it was a medically determinable impairment.[5] Moreover, because the

---

[5] A medically determinable impairment is one that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable

ALJ found Plaintiff's chest pains to be a result of Plaintiff's anxiety, which the ALJ found to be

a severe impairment at step two, the ALJ did consider Plaintiff's chest pains in formulating the

RFC.

The ALJ formulated an RFC that limited Plaintiff in the following ways relevant to

exertion: (1) he can lift and carry up to 20 pounds occasionally and ten pounds frequently; (2) he

can stand and walk two out of eight hours and sit for six out of eight hours; (3) he can never

climb ladders, ropes or scaffolds; (4) he can occasionally climb ramps or stairs, balance, stoop,

kneel, crouch and crawl; (5) he should avoid heights, hazards and heavy equipment; and (6) he

needs a cane to ambulate over uneven or rough surfaces. AR 23. Plaintiff does not assign error to

any specific limitation, or lack thereof, but broadly alleges that, had the ALJ considered

Plaintiff's WPW severe at step two, the RFC would have included more exertional limitations.

The Court disagrees. The RFC adequately incorporates limitations for Plaintiff's allegations of

chest pain and tightness and their resulting limitations on walking and other physical exertions.

**E.  VA's 70 Percent Disability Rating**

Plaintiff assigns error to the ALJ's dismissal of the VA's determination of disability. On

February 4, 2014, Plaintiff was assigned a 50 percent disability rating for his major depressive

disorder, which was based in part on his weekly panic attacks. AR 929. The VA also assigned

Plaintiff a 10 percent rating for his lumbar spine, a 10 percent rating for his right knee

patellofemoral syndrome, and a 10 percent rating for the same condition in his left knee. On

October 23, 2014, Plaintiff's lumbar spine rating and right knee rating were each increased from

---

clinical and laboratory diagnostic techniques," and it must be established "by medical evidence
of signs, symptoms, and laboratory findings," not just symptoms. 20 C.F.R. § 404.1521. Plaintiff
has been diagnosed with WPW syndrome, and that diagnosis has been confirmed throughout the
medical record. *E.g.*, AR 1975. Therefore, Plaintiff's WPW syndrome is a medically
determinable impairment.

10 to 20 percent (AR 274-75), and on December 28, 2015, Plaintiff's major depressive disorder and panic disorder rating was increased from 50 to 70 percent. AR 279.

An ALJ must ordinarily give great weight to the VA's disability determination because the VA disability program and the Social Security program serve the same governmental purpose. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). The criteria for determining disability are not identical between the two programs, however, so the ALJ may "give less weight to a VA disability rating if [the ALJ] gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.*

Here, the ALJ gave several reasons for giving partial weight to the VA's disability rating. The ALJ stated that "the record as a whole as discussed above is in contrast to some of [the VA's] reported reasoning for establishing the level of disability they assigned the claimant." AR 28. The reasons that the VA gave for increasing Plaintiff's disability rating from 50 to 70 percent for mental impairments included mild memory loss; forgetting recent events; panic attacks more than once a week; and near-continuous depression and panic affecting the ability to function independently, appropriately, and effectively. AR 279-80. These were the same symptoms that Dr. Yao endorsed in his disability questionnaire (*see* AR 1409), and the VA relied in part on this questionnaire when making its disability rating. AR 279. As discussed above, the ALJ did not err in partially crediting Dr. Yao's medical opinion because substantial evidence supported the ALJ's finding that the severity of these symptoms were not reflected in the medical record. Because the VA's reasoning was based in part on Dr. Yao's opinion, the ALJ's reason for giving partial weight to the VA's disability rating was sufficiently specific, persuasive, and supported by substantial evidence. Accordingly, the ALJ did not err in giving the VA's disability rating partial weight.

**CONCLUSION**

The Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 28th day of February, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge